IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ALEX MUNDY,

                Plaintiff,

v.                                                                                          OPINION and ORDER

BOARD OF REGENTS FOR THE                                              22-cv-561-jdp
UNIVERSITY OF WISCONSIN SYSTEM,

                Defendant.

---

This case is the second arising from plaintiff Alex Mundy's attempt to earn a master's degree in bacteriology at the University of Wisconsin. She first sued the Board of Regents of the University of Wisconsin System alleging disability discrimination. The court decided that case against Mundy. In this case, Mundy alleges that the department of bacteriology retaliated against her for filing the first suit by retracting a pre-litigation offer to give her a coursework-based degree. The case is scheduled for a final pretrial conference on July 3, 2024. This opinion will address the parties' motions in limine.

ANALYSIS

**A.  Motion to exclude testimony from Kevin Schutz**

In her first case, Mundy supported her claim for damages with vocational expert Kevin Schutz, who provided a report in July 2021. Dkt. 58. Schutz did not update his 2021 report for this case. The Board of Regents moves to exclude his testimony as inadmissible under Federal Rule of Evidence 702.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993) and *Kumho Tire Company, Ltd., v. Carmichael*, 526 U.S. 137, 147 (1999), the court must ensure that

proffered expert testimony meets the requirements of Rule 702. For testimony to be admissible under Rule 702, the individual proffering the testimony must be qualified as an expert, the expert's opinions must be based on reliable methods, and those methods must be reliably applied to the facts of the case.

Federal Rule of Civil Procedure 26 requires a complete and detailed disclosure of the expert's opinions and the reasons for them in a timely expert report. *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998). Thus, the court's analysis of the admissibility of an expert's testimony is based on the opinions, conclusions, and the basis and reasons for them in the expert's report. *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008). An expert may not cure deficiencies in his report with later deposition testimony. *Id.* The proponent of expert evidence bears the burden of establishing that the expert's testimony is admissible. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

The Board of Regents does not challenge Schutz's qualifications. But it contends that the report is not supported by sufficient data, that Schutz did not use a reliable method to reach his conclusions, and that both problems are exacerbated by Schutz failing to provide an updated report for this lawsuit. The court begins with the problems in Schutz's 2021 report, and then addresses the problems created by the failure to update the report.

1. **Schutz's 2021 report**

In his report, Schutz opined that Mundy would be able to earn approximately an additional $20,000 per year if she had a master's degree in bacteriology. Dkt. 58, at 8. Schutz explained that this estimate is based on a comparison of the average pay of life scientists in the Madison labor market to the average pay of public health and social service workers. Schutz stated that these estimates were based on 2019 data from the Wisconsin Department of

Workforce Development, and that, at the time Schutz interviewed Mundy to prepare his report, Mundy was earning $54,000 annually working as an associate project coordinator at a clinic research company, which put her in the middle of the pay range for public health and social service workers. Schutz also opined that Mundy could remediate her lost earning capacity by going back to school to earn the master's degree, which would reduce her earning by $50,000 to $100,000 over the year or two year that it would take her to complete the degree.

There is nothing inherently unreliable about the general method that Schutz used to evaluate the earning gap that Mundy suffered without a bacteriology master's degree: comparing the salary of jobs that Mundy could get with the degree to the salary of job that she could get without it. But there are fundamental problems with how Schutz applied that method in his report.

The most material portions of Schultz's report are in two paragraphs, so the court can quote them here in full:

> Examples of options available to Ms. Mundy with a completed Bachelor of Science degree in bacteriology would be positions found in life science and social science environments. According to the Wisconsin Department of Workforce Development (DWD), in 2019, the average pay to life scientists in the Madison labor market was $72,360 per year. At the top end of the pay continuum, individuals in that group earned between $80,000 and over $100,000 per year. Biological scientists in the all other category earned near $80,000 per year in 2019. Social scientists and related workers earned an average of $81,130 per year in 2019.
>
> . . .
>
> Ms. Mundy's current employment options would revolve around employment in public health and social service types of environments. She is currently earning $54,000 per year. That level of earnings is consistent with other options she would have.

3

> According to the Wisconsin Department of Workforce Development (DWD) to the wage survey cited above indicates that health education specialist in the Madison labor market earned average wages just under $56,000 per year in 2019. Community and social service specialists earned average wages of approximately $50,000 per year in the Madison labor market in 2019. Ms. Mundy would also have access to related administrative assistant types of positions. Earnings in the $45,000 to $50,000 per year would be expected in administrative or social/human service types of positions. Without additional acquisition, Ms. Mundy's employment options likely include/salary expectations likely in a range between $50,000 and $60,000 per year. The mid-point of that range is reflective of her current earning capacity.

Dkt. 58 at 7–8. Schutz goes on to offer his conclusion that her earning potential without the completed bacteriology degree was $50,000 to $60,000 per year, but with the degree it would have been $70,000 to $80,000 per year, resulting in annual lost earnings of $20,000.

Schutz's analysis has several flaws. To start, Schutz frames his analysis by citing "Examples of options available to Ms. Mundy with a completed Bachelor of Science degree in bacteriology would be positions found in life science and social science environments." But Mundy was pursing a *master's* degree in bacteriology. And she already had a master's degree in pubic health. So it's not clear that Schulz had properly identified Mundy's qualifications and identified the proper comparator positions.

Next it's not clear what positions Schutz thought would be available to Mundy with her completed bacteriology degree. Schutz provides the "the average pay to life scientists in the Madison labor market," but he does not explain what positions were included in reaching that average. "Life scientist" could refer to a wide range of jobs, from that of a routine laboratory technician with a technical degree to high-level research requiring an advanced degree. It is impossible to assess whether it is reasonable to compare Mundy's earning potential with a master's degree in bacteriology to the average life scientist salary without knowing if the jobs

4

included in that average are ones that Mundy might be able to get. Schutz's analysis is further muddled by his reference to the earnings of "biological scientists" and to "social scientists," who actually earned somewhat more than the "biological scientists."

Mundy contends that a vocational expert need not produce the labor market data he relied on for his opinions to be admissible, Dkt. 64, at 6, citing *Krell v. Saul*, 931 F.3d 582, 586 (7th Cir. 2019) and *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152–53 (2019). But the cases Mundy cites involve appeals from social security benefits determinations, which involve a lower standard of review than is applicable to this case. And Mundy misses the more fundamental point: Schutz did not have to produce the underlying data, but he had to explain his reasoning with enough detail to demonstrate that his opinions are reliable.

Schutz's analysis of Mundy's earning potential without the bacteriology master's degree has similar problems. Schutz begins by saying that Mundy's employment options without the bacteriology degree "would revolve around employment in public health and social service types of environments," presumably because she already had a master's degree in public health. But the example salaries that Schutz provides are for a "health education specialist," "community and social service specialists," "administrative assistant types of positions," and "administrative or social/human service types of positions." Schutz does not define these vague positions nor does he explain why they would be ones that a person with a masters of public health would pursue.

Schutz's report does not have to be unimpeachable to be admissible. But Schutz's report fails to provide enough information about the positions that he analyzed to show that the comparator salary ranges reliably reflect the purported impairment of Mundy's earning potential.

### 2. Schutz's 2024 deposition

The parties now have more information about Mundy's earning potential: she earns an annual salary of $103,000, far exceeding the $70,000 to $80,000 that Schutz had estimated as her potential with a completed bacteriology degree. Schutz did not update his report, and his 2021 report relies on stale data, which would be reason enough to exclude it in this case.

As discussed above, a deposition is not an opportunity for an expert to provide new opinions or to provide additional support or reasoning. The primary purpose of the expert deposition is to allow the opponent to test the expert's opinion and to develop impeachment. In this case, Schutz's recent deposition only undermines the opinions in his original report.

Schutz testified that he stands by his original opinion that Mundy has a $20,000 annual earning gap without the bacteriology degree, and he opined that he believes the earning gap will last for the remainder of Mundy's career. Dkt. 49 (Schutz Dep. 28:19–29:4). But without supporting analysis, that opinion is nothing more than a bottom-line conclusion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."); *Zamecnik v. Indian Prairie School Dist. No. 204*, 636 F.3d 874, 881 (7th Cir. 2011) ("Mere conclusions, without a hint of an inferential process, are useless to the court." (internal quotation marks and citation omitted)).

Schutz's own testimony earlier in his deposition contradicts his conclusion. When Schutz was asked if there were any changes to his opinion about Mundy returning to school to complete her master's degree, he responded "back then, [the degree] would have done what she's been able to do over the last four years by kind of working her way up into this industry, this occupational group. . . it wouldn't be probable that she could do any better by doing that

6

at this point." Dkt. 49 (Schutz Dep. 14:23–15:11). Schutz's testimony is that Mundy, over the course of three years of work in her profession, has remediated any impairment in her earning potential. Perhaps Mundy endured some loss of earnings over the course of the last three years, but Schutz provided no opinion on that. Perhaps inflation played a role in the increase in Mundy's salary, but Shutz provided no opinion on that either.

The court concludes that Schutz's conclusion that Mundy will endure a permanent impairment of her earning potential of $20,000 per year is a mere conclusion without supporting analysis. The court will exclude Schutz's testimony.

**B.  Motion for a bench trial**

The Board of Regents contends that Mundy is not entitled to a jury trial because she does not have a viable claim for damages, which means the only potential relief at issue is Mundy's request for an injunction ordering the university to award her the coursework degree.

Mundy now claims she suffered two categories of damages from not being awarded the bacteriology master's degree: (1) lost future income and (2) emotional distress. Dkt. 59, at 4.[1]

As for future loss of earning capacity, Mundy concedes that she needs expert testimony to support her claim for the additional income she could have earned if she had been awarded the degree in June 2020. *See* Dkt. 64, at 7 ("[A] layperson knows that a master's degree in the sciences has economic value. Only an expert can quantify it."). Because the court will exclude Schutz's opinions, Mundy does not have evidence to prove that she is entitled to damages for loss of future earnings, so Mundy cannot recover this category of damages.

---

[1] Mundy's initial Rule 26 disclosure also listed damages related to tuition expenses and lost earnings Mundy would incur going back to school to get the degree. But, as discussed above, Schutz retracted his opinion that Mundy could mitigate her damages by going back to school to get the degree, so Mundy has abandoned her request for this category of damages.

As for emotional distress damages, the Supreme Court has held that plaintiffs cannot recover emotional distress damages for claims brought under Spending Clause statutes, including the Rehabilitation Act. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022). In *Cummings,* the Court explained that the scope of remedies in private litigation brought under Spending Clause statutes is analogous to the scope of remedies under contract law. A remedy for violating a Spending Clause statute is only available if the funding recipient is on notice that accepting federal funds makes it liable for a particular type of damages. *Id.* at 219–20. The Court reasoned that emotional distress damages are not an available remedy for violations of the Rehabilitation Act because emotional distress is generally not compensable in contract.

Mundy contends that the Supreme Court's holding in *Cummings* does not apply here because a Wisconsin statute put the university on notice that it would have to pay emotional distress damages for disability discrimination. *See* Dkt. 68, at 1–2. But Mundy brought her retaliation claim under the Rehabilitation Act (not any state statutes). Any damage award in this case would be under the Rehabilitation Act, which does not allow her to recover emotional distress damages. The existence of a state law that allows plaintiffs to recover other types of damages for disability discrimination has no impact on the scope of damages available under the Rehabilitation Act.

Mundy also opposes the Board of Regents' motion by contending that it is an untimely dispositive motion disguised as a motion in limine that should be denied as procedurally improper. Parties are not required to move for summary judgment, although there is a deadline for them to do so. But even if a party chooses not to seek summary judgment, that party does not forfeit its right to seek evidentiary rulings in advance of trial.

8

Because Mundy cannot recover monetary damages, the only relief still at issue is Mundy's request for an order that the university to award her the coursework degree. Mundy does not have a right to a jury trial on a request for an equitable remedy such as injunctive relief. *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 649 (7th Cir. 2002). The court will grant the Board of Regents' motion for a bench trial.

Mundy asks the court to adjourn the trial date if it grants the Board of Regents' request because bench trials require a different set of pretrial disclosures and a different strategy for presenting proof. The court will deny Mundy's request for an adjournment, because the presentation of proof to the court will, if anything, be simpler than presentation to a jury. The court will also adjust the court's standing order concerning pretrial disclosures. The court will direct the parties to file pre-trial briefs that identify the contested issues of law and fact, and to submit electronic copies of their exhibits using the Box.com invitation sent by the clerk's office. The parties will not be required to submit proposed findings of fact or any additional special verdict forms.

**C.  Board of Regents' motion in limine to introduce findings of fact from Mundy's disability discrimination lawsuit**

The Board of Regents moves for the court to enter into evidence its findings of fact from Mundy's 2020 lawsuit by reading them to the jury as part of opening instructions and including a written copy with the materials provided to the jury for deliberations. That motion is denied. The court would not read its summary judgment order to the jury. But because this matter will be tried to the court, the request is moot.

**D. Mundy's motions in limine**

Mundy moves to exclude five categories of evidence that she contends would cause unfair prejudice: (1) references to unrelated lawsuits or administrative claims that Mundy has brought concerning events other than those at issue in this litigation, (2) the merits of a State of Wisconsin Equal Rights Division case related Mundy testing positive for marijuana, (3) reference to the court's finding that, in her disability discrimination lawsuit, Mundy submitted an affidavit that contradicted her deposition testimony, (4) information about the attorney fee award that Mundy could receive if she prevails, and (5) argument that taxpayers will be responsible for paying for damages if Mundy prevails. The Board of Regents opposes only motion 3, so the court will grant as unopposed Mundy's motions in limine 1, 2, 4, and 5.

As for references to the affidavit Mundy submitted in her prior case before this court, *Mundy v. Board of Regents for University of Wisconsin Sysstem*, No. 20-CV-847, 2022 WL 103562, (W.D. Wis. Jan. 11, 2022), the court will deny Mundy's motion to preclude the Board of Regents from arguing that Mundy submitted a false declaration. Prior statements that Mundy made under oath concerning her work in the bacteriology master's degree program in support of her disability discrimination lawsuit are relevant to the university's subsequent decision to refuse Mundy's request for a degree based on the coursework track. As the court previously explained, the Rehabilitation Act does not prohibit the university from considering information about Mundy's prior conduct merely because she disclosed that information in connection with the lawsuit. Dkt. 37, at 6 (citing *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 745 (7th Cir. 2010).

ORDER

IT IS ORDERED that:

1. Defendant's motion in limine to exclude expert testimony, Dkt. 55, is GRANTED. Kevin Schutz may not testify at trial.

2. Defendant's motion in limine regarding exclusion of plaintiff's damages claims and for a bench trial, Dkt. 54, is GRANTED.

3. Defendant's motion in limine to introduce findings of fact from plaintiff Alex Mundy's prior disability discrimination lawsuit, Dkt. 56, is DENIED as moot.

4. Mundy's motions in limine 1, 2, 4, and 5, Dkt. 47, are GRANTED in part as unopposed. Mundy's motion in limine 3 is DENIED.

5. The parties are directed to upload their exhibits to the Box by June 28.

6. The parties are directed to file trial briefs with the court by July 1. The parties are not required to file any of the other pre-trial submissions required by the court's standing order governing the final pretrial conference in bench trials.

Entered June 26, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge